IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BLANCA SANCHEZ,    :
          :
   Plaintiff,    :
          :
v.         :  CIVIL ACTION NO. 1:15-cv-1579
          :     (CMH/IDD)
CAREGIVERS STAFFING SERVICES, :
 INC., *et al.*,     :
          :
   Defendants.   :

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

   Defendants Caregivers Staffing Services, Inc., Caregivers Home Health Services, Inc. and Silvia Echeverria, by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submit the following brief in support of their motion for summary judgment.

## I.  STATEMENT OF THE CASE

   Plaintiff Blanca Sanchez is a home health aide or personal care aide.  She is seeking overtime pay from two employers, Caregivers Staffing Services, Inc. ("CSS") and Caregivers Home Health Services, Inc. ("CHHS"), and an individual, Silva Echeverria, who is the owner of CSS and is a minority owner and administrator for CHHS.  CSS and CHHS are separate and distinct Virginia corporations that offer, respectively, non-skilled and skilled in-home services through home health aides and personal care aides, registered nurses, practical nurses, physical therapists, and certified nurse assistants.

   Plaintiff began working for CSS as a personal care aide and CHHS as a home health aide in or about 2008.  Since the inception of her employment with these two companies, Plaintiff has been compensated at different rates and used different time cards to track her hours depending on the type of service performed and the company for whom the work was performed.  Am. Compl.

¶ 13.  From the beginning of her employment through November 12, 2015, CSS and CHHS each considered Plaintiff to be an exempt employee under the companionship services exemption of the Fair Labor Standards Act ("FLSA") and did not consider Plaintiff eligible for overtime compensation.  None of the services provided by Plaintiff during the relevant time period of January 1, 2015 to July 31, 2015, or before, required skill or training that would take her out of the companionship services exemption.

The new rule on which Plaintiff relies to make her claim for overtime did not go into effect until November 12, 2015.  Plaintiff contends that she is owed overtime pay for approximately 344 hours of overtime work, by treating both companies as a single employer, from January 2015 through July 2015.  It is without dispute that Plaintiff has worked no overtime hours for either company since July 2015.

In addition to her claims for overtime, Plaintiff has brought claims for retaliation under the FLSA and *quantum meruit*.  The evidence in the record demonstrates that there are no facts to support Plaintiff's claim of retaliation and that Plaintiff was fully compensated for her services at the agreed upon rates, thereby eliminating a claim for *quantum meruit.*

Discovery is now closed and the case is ripe for summary judgment in favor of the defendants.

**II.      STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

1.       CSS is a Virginia corporation.  Am. Compl. ¶ 7.

2.       CSS is owned and operated by Silvia Echeverria.  CSS provides non-skilled home health care services.  Exhibit 1 attached hereto, Deposition of CSS, p. 6.

3.     Caregivers Home Health Services, Inc. ("CHHS") is a Virginia corporation.  Am. Compl. ¶ 8.  Silvia Echeverria is the Administrator for CHHS and a minority owner.  Exhibit 2 attached hereto, Deposition of CHHS, p. 5.

4.     CHHS provides skilled home health care services and non-skilled services under a state contract for Medicaid waiver services.  Ex. 2, CHHS Depo, p. 7.

5.     Plaintiff Blanca Sanchez was a fulltime employee of Caregivers Home Health Services, Inc. from 2007 to December 31, 2015.  Exhibit 3 attached hereto, Declaration of CHHS, ¶¶ 3 & 21.

6.     Plaintiff has been a part-time employee of CHHS since January 1, 2016.  Ex. 3, CHHS Declaration, ¶ 20.

7.     Plaintiff was an employee of Caregivers Staffing Services, Inc. from 2007 to October 31, 2015.  Exhibit 4 attached hereto, Declaration of CSS, ¶ 4.

8.     Plaintiff is not and never has been an employee of Silvia Echeverria.  Exhibit 5 attached hereto, Declaration of Silvia Echeverria, ¶¶ 3 & 4.

9.     Plaintiff had different types of jobs with CSS and CHHS and the pay was different.  Exhibit 6 attached hereto, Deposition of Plaintiff, p. 27.  Plaintiff received separate paychecks from her two employers.  Ex. 6, Pl. Depo1, p. 54.

10.     Plaintiff provided in-home personal care assistance on an hourly basis as a personal care aide (PCA) to clients of CSS, earning an agreed rate of $16 per hour in 2015.  Ex. 4, CSS Declaration, ¶ 5; Ex. 6, Pl. Depo1, p. 47.  All hours worked by Plaintiff for CSS were paid at the agreed rate.

11.     Plaintiff did flat fee, personal care bathing visits as a home health aide (HHA) for CHHS at an agreed compensation rate of $25 per visit.  Ex. 3, CHHS Declaration, ¶ 5; Ex. 6, Pl.

Depo1, pp. 46-47.  Plaintiff is paid the per-visit rate whether the visit lasts 30 minutes or more than one hour.  All visits completed by Plaintiff for CHHS were paid at the agreed rate.  Ex. 3, CHHS Declaration, ¶ 7.

12.    From the beginning of her employment, CSS and CHHS each considered Plaintiff to be an exempt employee under the companionship services exemption of the Fair Labor Standards Act ("FLSA") and did not consider Plaintiff eligible for overtime compensation.  Ex. 3, CHHS Declaration, ¶ 12; Ex. 4, CSS Declaration, ¶ 8.

13.    Blanca Sanchez has training and work experience as a home health aide (HHA) and personal care aide (PCA).  Exhibit 7 attached hereto, Plaintiff's Deposition Exhibits 1 and 2.

14.    Blanca Sanchez has not been trained or licensed to work as a registered nurse (RN), practical nurse (LPN) or certified nurse assistant (CNA).  Ex. 6, Pl. Depo1, pp.  12-13, 16-17.

15.    None of the services provided by Plaintiff for CSS or CHHS, during the relevant time period of January 1, 2015 to July 31, 2015, required the skill and training that would take her out of the companionship services exemption.  Exhibit 8 attached hereto, Declaration of Teresita Umlas-Sarignaya, ¶ 10.

16.    Plaintiff did not perform substantial housework for any client of CSS or CHHS. Ex. 6, Pl. Depo1, pp. 122–25.  In written discovery responses, Plaintiff identified one client for whom she did personal housework on the weekends.  In her deposition, Plaintiff admitted that the housework was only for the client (not other family members) and took minimal amounts of time.  *Id.*

17.     Plaintiff did not perform ostomy care for any client of CSS or CHHS.  Ex. 6, Pl. Depo1, pp. 129–31;[1] Ex. 8, Umlas-Sarignaya Declaration, ¶ 6; Exhibit 9 attached hereto, Deposition of Plaintiff (Part 2), pp. 46-50, 64-69.

18.     Plaintiff did not perform medically-related repositioning.  The only repositioning of clients performed by the plaintiff was for two clients in connection with routine sponge bathing or showering.  Ex. 9, Pl. Depo2, pp. 52-55; Ex. 8, Umlas-Sarignaya Declaration, ¶ 7.

19.     Plaintiff did not perform complex or sterile wound care that required the training or skill of a nurse.  Ex. 9, Pl. Depo2, pp. 28-29, 32–34, 43–44, 106–07; Ex. 8, Umlas-Sarignaya Declaration, ¶ 5.[2]

20.     Plaintiff was not told by CSS or CHHS in 2014 that she was fired.  Ex. 6, Pl. Depo1, pp.  67-73.  Plaintiff did not miss any time form work or lose any pay.  No patients were taken away from Plaintiff.  *Id.* at 79-80.

21.     Plaintiff was not retaliated against by CHHS prior to January 20, 2015.  Exhibit 10 attached hereto, Plaintiff's Deposition Exhibits 3 & 4.  Plaintiff voluntarily released and discharged CHHS from all claims relating to the "firing" incident in November 2014.  Ex. 6, Pl. Depo1, pp. 71–73; Ex. 10.

---

[1] In written discovery responses, Plaintiff identified one client for whom she allegedly provided ostomy care.  During her deposition, Plaintiff was unable to define the word "ostomy" and the client for whom she allegedly provided ostomy care did not have an ostomy.  *See* Ex. 6, Pl. Depo1, pp. 129–31; Ex. 8, Umlas-Sarignaya Declaration, ¶ 6.

[2] In written discovery responses, Plaintiff identified five clients for whom she "routinely performed cleaning and dressing of wound sites."  One of those clients (MJ) died in 2013. Another (HH) had no wounds in 2015.  For the other three, Plaintiff applied creams and bandages in connection with bathing.  Plaintiff identified a sixth client (DR) in her deposition. DR has not been a client of either CSS or CHHS since 2012.

22.     There was no reduction in the number of patients seen by the plaintiff in April, May or June of 2015.  *See* Summaries of hours worked in 2015, attached hereto as Exhibits 11 and 12.[3]

23.     The number of hours Plaintiff worked for CSS decreased in July 2015 upon the death of the person for whom Plaintiff worked more than 40 hours each week.  Ex. 4, CSS Declaration, ¶16.

24.     Plaintiff stopped working for CSS in October 2015 when she requested reassignment of the one patient for whom she was working each day as a personal care aide. Exhibit 12 attached hereto, Text Message from Plaintiff, produced by Plaintiff in discovery (Sanchez 270).

25.     Despite an allegation to the contrary in the Amended Complaint, Plaintiff did not raise concerns in December 2015 about performing services that a LPN should be doing.  Ex. 9, Pl. Depo2, pp. 24-27.

26.     Neither CSS nor CHHS took patients away from Plaintiff in December 2015. Exhs. 11 & 12.

27.     CHHS terminated its employee health care plan in July 2015.  Ex. 3, CHHS Declaration, ¶ 20 ; Exhibit 13 attached hereto, Plaintiff's Deposition Exhibit 7.  No employee benefits were terminated for Plaintiff or any other employee in January 2016.  Ex. 3, CHHS Declaration, ¶ 20.

28.     No retaliatory action was taken against Plaintiff as a consequence of her questions about overtime pay.  Ex. 3, CHHS Declaration, ¶ 16; Ex. 4, CSS Declaration, ¶ 15.

_____

[3] These summaries are based on time sheets and pay records of the plaintiff.

29.     Plaintiff was offered fulltime employment with CHHS in the fall of 2015 and again in January 2016 and declined to accept the offer.  Ex. 6, Pl. Depo1, pp. 89-92; Exhibit 15 attached hereto, Plaintiff's Deposition Exhibits 6 & 8.

30.     Both CSS and CHHS require its employees to provide valid CPR certification. Per company policy, CHHS does not accept CPR certification completed on line.  Ex. 3, CHHS Declaration, ¶ 24.  In February 2016, for the first time, Plaintiff completed her mandatory CPR re-certification on line.  Ex. 6, Pl. Depo1, pp. 111–12.  Plaintiff and other employees who submitted online CPR certifications were advised that they would have to obtain certification in a classroom setting.  Ex. 3, CHHS Declaration, ¶ 24.  Plaintiff complied with the company's request.  *Id.*

31.     Plaintiff has not worked overtime, more than 40 hours a week, for CSS and/or CHHS since July 31, 2015.  Exhs. 11 & 12.

## III.     LAW AND ARGUMENT

### A.     LEGAL STANDARD

Under Rule 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. Civ. Pro. R. 56(a); *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011).  Summary judgment is mandated against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Nyugen v. CNA Corp.*, 44 F.3d 234, 236-37 (4th Cir. 1995).   Furthermore, the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Additionally, the "mere existence of some disputed facts does not merit a trial unless the disputed facts are material to an issue necessary for proper resolution of the case and the quality and quantity of the evidence offered to support a question of fact are adequate to support a jury verdict." *Tamar v. GEICO Cas. Co.*, 2011 U.S. Dist. LEXIS 120209, *7 (E.D. Va. 2011).  "[U]nsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *LBCMT 2007-C3 Sterling Retail, LLC v. Sheppard*, 2013 U.S. Dist. LEXIS 69913, *6 (E.D. Va. 2013) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006).

B.    COUNT ONE – VIOLATION OF FLSA OVERTIME REQUIREMENTS

Count One of Plaintiff's Amended Complaint seeks to recover pay for overtime pursuant to the Fair Labor Standards Act ("FLSA") from January 2015 through July 2015.  Am. Compl. 50.[4]  However, during this time period, there was no obligation under the FLSA for Defendants to pay Plaintiff overtime. Plaintiff was an exempt employee under the companionship services rule applicable at the time.  The new rule on which Plaintiff relies did not go into effect until November 2015.

1.    Changes to the Companionship Services Exemption Did Not Go into Effect until November 2015.

Since 1975, third-party providers of home healthcare services have been exempt from the overtime pay requirement of the FLSA.  Specifically, individuals who performed

---

[4] Although Plaintiff makes a blanket allegation that Defendants' failure to pay overtime is ongoing, there are no facts in the record to support this allegation.  Plaintiff has worked no overtime since July 31, 2015.  Ex. 6, Pl. Depo1, pp. 14-15; Exhs. 11 & 12.

"companionship services" were exempt from the minimum wage and overtime requirements of

the FLSA.  The Code of Federal Regulations previously defined "Companionship Services" as:

> Those services which provide fellowship, care, and protection for a
> person who, because of advanced age or physical or mental
> infirmity, cannot care for his or her own needs.  Such services may
> include household work related to the care of the aged or infirm
> person such as meal preparation, bed making, washing of clothes,
> and other similar services.  They may also include the performance
> of general household work: Provided, however that such work is
> incidental, i.e. does not exceed 20 percent of the total weekly hours
> worked.  The term "companionship services" does not include
> services relating to the care and protection of the aged or infirm
> which require and are performed by trained personnel, such as a
> registered or practical nurse.

29 C.F.R. § 552.6 (Amended by 29 C.F.R. § 552.6 (Oct. 1, 2013)).

An individual providing companionship services was exempt from the overtime

requirements of the FLSA unless they fell within the trained personnel exception referenced at

the end of the definition.  In order to qualify for overtime under the trained personnel exception,

the employee must not only have performed the "services requiring the training of a registered or

practical nurse, but must in fact have obtained training comparable in scope and duration to that

of a registered or practical nurse."  *Cox v. Acme Health Services, Inc.,* 55 F.3d 1304, 1310 (7th

Cir. 1995).  Individuals working as home health aides fell short of the trained personnel

exception and were not deemed entitled to overtime.  *Id.* at 1310.

In 2013, the Department of Labor issued a regulation terminating the trained personnel

exception.  The new rule specifically removed from the definition of "companionship services"

medical tasks which "typically require and are performed by trained personnel such as registered

nurses, licensed practical nurses, or certified nursing assistants[.]"  The new rule went on to state

that the determination of whether or not an individual is providing companionship services "is

not based on the actual training or occupational title of the individual performing the services."

29 C.F.R. § 552.6(d).  In a publication titled *Fact Sheet #79A: Companionship Services Under the Fair Labor Standards Act (FLSA)*, the Department of Labor specifically noted that "medically related services that typically require training by medical personnel include . . . catheter care, turning and repositioning, ostomy care[.]" *Fact Sheet #79A: Companionship Services Under the Fair Labor Standards Act (FLSA),* www.dol.gov/whd/regs/compliance/ whdfs79a.htm.  The new rule was to take effect in January 2015.  *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60494 (Oct. 1, 2013).

In December 2014, just prior to the effective date, the Home Care Association of America challenged the new rule in the United States District Court for the District of Columbia. The Court granted a temporary restraining order on December 31, 2014, "staying the regulation from going into effect for fourteen days." *Home Care Ass'n of Am. v. Weil,* 78 F. Supp. 3d 123, 124 (D. D.C. 2015).  The Court subsequently ruled that the Department of Labor had exceeded its rule-making authority in eliminating the exemption and vacated the rule.  *Home Care Ass'n of Am. v. Weil,* 78 F. Supp. 3d 123 (D.DC 2015).  The decision was appealed and the D.C. Circuit Court of Appeals concluded that the rule was valid.  *Home Care Ass'n of Am. v. Weil,* 799 F.3d 1084 (D.C. Cir. 2015).  The Department of Labor subsequently indicated that it would not bring enforcement actions for violations of the rule prior to November 12, 2015.  *See* Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed. Reg. 65646 (Oct. 27, 2015); *Bangoy v. Total Homecare Solutions, LLC,* Case. No. 1:15-CV-573 (S.D. Ohio, Dec. 21, 2015).

This sequence of events, including the stay and subsequent vacatur of the new rule created a legal nullity until the D.C. Court of Appeals issued its mandate and the rule was reinstated.  Without a valid effective date, the new rule was a legal nullity as the effective date

dictates adherence to the rule.  *See Natural Res. Defense Council, Inc. v. U.S. E.P.A.*, 683 F.2d 752, 761 – 62 (3d Cir. 1982).  Thus, from the date that the District Court for the District of Columbia granted the temporary restraining order staying the regulation from going into effect to the issuance of the mandate by the Court of Appeals, the new rule was a legal nullity requiring no adherence.  Allowing plaintiffs to recover for violations during the time period that the "vacatur was in effect would give the rule an impermissible retroactive effect."  *Bangoy v. Total Homecare Solutions, LLC,* Case No. 1:15-cv-573, *5 (S.D. Ohio, Dec. 21, 2015) (*citing Fernandez-Vargas v. Gonzales,* 548 U.S. 30, 37 (2000)).  Moreover, the decision by the Department of Labor not to bring enforcement actions prior to the reinstatement of the rule "strongly suggests that the rule should not be given retroactive effect in cases between private parties."  *Id.*  Notably, the Supreme Court has stated that "the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reason."  *Id.* (*quoting  Skidmore v. Swift & Co.,* 323 U.S. 134, 139 – 40 (1944)).

Plaintiff in this case worked for the corporate defendants as a personal care aide and home health aide.  Am. Compl. ¶ 13.  Plaintiff was classified as exempt under the companionship services exemption to overtime.  Am. Compl. ¶14.  Plaintiff's Amended Complaint seeks payment of the "overtime premium" for the time period of January to July 2015.  This time period thus falls squarely within the period in which the new rule was a legal nullity and Plaintiff is not entitled to the overtime pay requested in this action.  As Plaintiff has no evidence of a failure of Defendants to pay overtime following the new enforcement date of November 12, 2015, and the new rule was a legal nullity not requiring compliance until that time, summary judgment should be entered in Defendants' favor and against Plaintiff on Count One of the Amended Complaint.

2.      Plaintiff Was an Exempt Employee until November 2015.

Plaintiff contends that even if the new companionship services rule does not apply, she performed services outside of the prior exemption and is therefore entitled to overtime. However, the evidence in the record belies this contention.

As noted above, the Federal Regulation defined "companionship services" as

> [T]hose services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse. . . .

29 C.F.R. § 552.6 (Amended by 29 C.F.R. § 552.6 (Oct. 1, 2013)).

In order to qualify for overtime the employee may either perform general household work in excess of 20 percent of the total weekly hours worked or perform work falling within the trained personnel exception.  Plaintiff did not qualify for overtime under either of these exceptions to the exemption.

a.      *Plaintiff did not meet the criteria for the trained personnel exception.*

In order to qualify for overtime under the trained personnel exception, the employee must not only have performed the "services requiring the training of a registered or practical nurse, but must in fact have obtained training comparable in scope and duration to that of a registered or practical nurse."  *Cox v. Acme Health Services, Inc.,* 55 F.3d 1304, 1310 (7th Cir. 1995). Plaintiff in this case neither had training comparable to a registered or practical nurse, nor provided services required of a registered or practical nurse.

i.      Plaintiff lacked the requisite training.

Plaintiff in this case was a personal care aide and a home health aide.  Ex. 6, Pl. Depo1, pp. 46–47.  Plaintiff did not have training or the applicable licensure for work as a CNA, practical nurse (LPN) or registered nurse. *Id.* pp. 12–13, 16–17.  Thus, Plaintiff neither had the credentials nor training to fall within the trained personnel exception to the companionship services exemption under the prior rule.

ii.      Plaintiff did not provide services required to be performed by trained personnel such as a registered or practical nurse.

Under the prior rule, courts have concluded that services such as dispensing medications, changing and cleaning catheters, performing range of motion exercises, performing bowel programs, and caring for wounds fall within the definition of companionship services. *See Armani v. Maxim Healthcare Services, Inc., 53 F. Supp. 2d 1120, 1125 (D. Colorado 1999); see also Salyer v. Ohio Bureau of Workers Compensation,* 83 F.3d 784, 787 (6th Cir. 1996) (providing medication and helping dress, bathe, ambulate and clean); *Cox v. Acme Health Services, Inc.,* 55 F.3d 1304, 1306 & 1311 (7th Cir. 1995) (providing therapy and nursing services, personal care, ambulation, exercise, household services, and medication assistance); *McCune v. Oregon Sr. Services Div.,* 894 F. 2d 1109 (9th Cir. 1990) (performing cleaning, cooking, hygiene, and medical care).

Regulations applicable to healthcare, such as those pertaining to Medicare and Medicaid, also differentiate between companionship services and those services to be provided by trained personnel.  Services such as general maintenance care of colostomy, simple wound care and general turning and positioning are generally considered personal care services.  For example, 42 C.F.R. 409.33 defines "personal care services" as services "which do not require the skills of qualified technical or professional personnel[.]"  According to the regulation, services such as

general maintenance care of colostomy and ileostomy; changes of dressings for infected postoperative or chronic conditions, prophylactic and palliative skin care including bathing and application of creams or treatment of minor skin problems and periodic turning and positioning in bed are examples of personal care services.  42 C.F.R. 409.33(d).

Plaintiff in this case contends that she was not an exempt employee under the companionship services exemption and therefore entitled to overtime pay due to the fact that she provided medically-related services such as "repositioning, ostomy care, cleaning and dressing wound sites" Am. Compl. ¶ 14.   The evidence in the record demonstrates that Plaintiff either did not provide services requiring trained personnel or did not provide the services described in her Amended Complaint.

Plaintiff concedes that she did not perform ostomy care or medically-related repositioning.  The medical records of Plaintiff's client visits from January to November 2015 demonstrate that Plaintiff did not engage in repositioning or wound care which required the services of trained personnel.  Ex. 8, Umlas-Sarignaya Declaration ¶¶ 7–8.  Additonally, Plaintiff never noted that such services were needed by any of her clients on her time and task records. *Id.*  Plaintiff admitted in her deposition that any repositioning she performed was performed in conjunction with assisting two clients in bathing.  Ex. 9, Pl. Depo2, pp. 52–55.  The wound care on which Plaintiff relies was limited to applying creams and new bandaging following a sponge bath or shower.  Ex. 9, Pl. Depo2, pp. 28-29, 32–34, 43–44, 106–07; Ex. 8, Umlas-Sarignaya Declaration, ¶ 5.  With respect to ostomy care, Plaintiff's deposition testimony not only reveals that Plaintiff did not provide ostomy care but that she does not know what ostomy care is.  Ex. 6,

Pl. Depo1. pp. 129–131.[5]  Plaintiff thus did not provide the services of trained personnel and does not qualify for overtime pursuant to this exception to the prior rule.

> b.    *Plaintiff did not perform general housework for more than 20 percent of her total weekly hours worked.*

Plaintiff contends that she performed housework for clients and thus fell outside of the companionship services exemption.  However, the amount of housework Plaintiff performed, whether part of her care for the patient or general housework incidental to the care, falls far short of the amount necessary to trigger the payment of overtime.

According to the prior rule, companionship services could also include housework "related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services."  29 C.F.R. § 552.6 (Amended by 29 C.F.R. § 552.6 (Oct. 1, 2013)).  Companionship services could also include incidental general housework up to 20 percent of the total weekly hours.  29 C.F.R. § 552.6 (Amended by 29 C.F.R. § 552.6 (Oct. 1, 2013)).  At most, Plaintiff engaged in a few minutes of housework for her 1 or 2 clients each week.  Ex. 6, Pl. Depo1, p. 122-25.[6]  Plaintiff's own deposition testimony reveals that Plaintiff may have vacuumed for a few minutes or cleaned dishes for a maximum of five minutes.  Plaintiff further testified that she did not provide these services for all of her patients.  *Id.* at 124.  If the circumstances warranted it, she would change the bed linens of the patient or clean the table where the patient ate.  *Id.* at 124-25.  As Plaintiff worked more than 50 hours per week, a

---

[5] When questioned "Do you know what ostomy care is?" Plaintiff responded "I don't remember exactly.  I am very tired.  My mind is a lot of stress."  Ex. 6, Pl. Depo1, p. 129.  Plaintiff could not describe what she considered to be ostomy care or to whom she provided ostomy care.  *Id.* at 130.

[6] HHAs and CNAs for CHHS were instructed not to perform "heavy housework or cook" for clients.  Ex. 3, Attach. A.  Thus, housework in excess of 20 percent would have been contrary to company policy.

few minutes of housework (or even hours) per week would not take her outside the overtime exemption.

As Plaintiff neither qualified for the trained personnel exception to the prior rule nor performed sufficient housework to qualify for overtime under the FLSA, Defendants are entitled to judgment in their favor and against Plaintiff on Count One of the Amended Complaint.

C.   COUNT TWO – *QUANTUM MERUIT*

Count Two of the Amended Complaint alleges a claim for *quantum meruit* against all of the defendants for the overtime premium wages as an alternative to Count One.  The evidence in the record demonstrates that Plaintiff had an employment contract with each of the corporate defendants and was not employed by defendant Silvia Echeverria.  Plaintiff's claim for *quantum meruit* thus fails.

A claim for *quantum meruit* allows for recovery on an implied contract for the reasonable value of services rendered when nothing has been said as to the amount of compensation for the services.  *Mongold v. Woods,* 278 Va. 196, 203 (2009).  Under Virginia law, a claim for *quantum meruit* will arise "if there is no special agreement as to the amount of compensation and the services are not intended to be gratuitous[.]"  *In re Moyer,*190 F. Supp. 867, 873 (W.D. Va. 1960).  The law will imply "a promise by the employer to pay what the services reasonably are worth[.]"  *Id.*  However, only in the absence of a contract is it proper for the court to imply one. *Mongold,* 278 Va. at 204; *Southern Biscuit Co. v. Lloyd,* 174 Va. 299, 311 (1940); *Demott v. Cluett, Peabody & Co., Inc.,* 1980 WL 143147, *2 (Cir. Ct. City of Richmond, Va. 1980).

In the instant action, there is neither an absence of agreement nor absence of payment. According to the allegations in the Amended Complaint, "Defendants did not pay Ms. Sanchez one and half times her regular rate of pay for the hours that she worked in excess of 40 in each

workweek." Am. Compl. ¶ 33.  There is no claim that Defendants failed to compensate Plaintiff

for hours worked at her agreed rate of pay.  Rather than asking the Court to imply a contract to

prevent an injustice, Plaintiff's claim for *quantum meruit* seeks to have this Court add terms to

existing agreements to pay Plaintiff an overtime premium which was not part of her existing

employment contract.  Plaintiff received paychecks from both corporate defendants based on the

hours worked or client-visits made.  Plaintiff was employed by CSS as a personal care aide.  Ex.

6, Pl. Depo1, p. 47.  As a personal care aide, Plaintiff received $16 per hour.  *Id.*  Plaintiff's

employment with CHHS likewise was governed by an employment contract.  When Plaintiff

began working for CHHS, she understood and agreed that she would be paid a flat rate of $25

per shower visit.  Ex. 6, Pl. Depo1, pp. 46-47.  Plaintiff was compensated at this same rate

whether the client visit took 25 minutes or more than an hour.  Ex. 3, CHHS Declaration, ¶ 7.

Furthermore, the position was specifically identified as exempt from minimum wage and

overtime requirements of the FLSA in the position description.  Exhibit 16 attached hereto,

CHHS Trial Ex. 23; Ex. 3, CHHS Declaration, ¶ 4.

     The evidence in this case demonstrates that there is not an absence of an agreement with

either of Plaintiff's employers.  Plaintiff was well aware of her compensation plans and was paid

accordingly.  Plaintiff was compensated for all services performed whether at the hourly rate

provided by CSS or at the per client-visit rate for CHHS.  Ex. 3, CHHS Declaration, ¶ 8 & Ex. 4,

CSS Declaration, ¶ 6.  The only question in this case is whether the corporate defendants were

obligated to pay Plaintiff an "overtime premium" pursuant to changes in federal law.  While the

answer to this question will determine the outcome of Count One of the Amended Complaint, it

has no bearing on whether a contract existed and cannot be used to nullify existing employment

contracts to then create a claim for *quantum meruit*.

Finally, even if this Court were to determine that the claim for *quantum meruit* is proper against the two corporate defendants, a claim for *quantum meruit* does not lie against the individual defendant, Silvia Echeverria.  Ex. 5, Echeverria Declaration,  ¶ 4.  No evidence in the record indicates that Plaintiff worked directly or personally for Ms. Echeverria.  The services provided by Plaintiff were as part of her employment with CSS and CHHS.  No services were rendered directly to Ms. Echeverria for which compensation would be due.

  D.  <u>COUNT THREE – RETALIATION UNDER FLSA</u>

  Count Three of the Amended Complaint alleges a claim for retaliation asserting that Defendants retaliated against Plaintiff by reducing the number of patients assigned to her care, thereby reducing her hours after Plaintiff complained about unpaid overtime and after filing the instant action.  However, the evidence in the record demonstrates that Plaintiff neither complained with the requisite level of formality nor was she subject to retaliatory action to support a claim for retaliation under the FLSA.

  The Retaliation provision of FLSA, 29 U.S.C. § 215(a)(3), provides that it is unlawful to

> Discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

A Plaintiff must ultimately prove that she engaged in a protected activity, materially adverse action was taken and that there is a causal link between the protected activity and the adverse action.  *Reardon v. Herring,* ___ F. Supp. 3d __, 2016 WL 3181138, *16 (E.D. Va. 2016).  Action is considered unlawful "only if it would not have occurred 'but for' the employer's retaliatory intent"  *Hackney v. Arlington County Police Dept.,* 145 F.3d 1324, *4 (4th Cir. 1998)(unpublished).  While a complaint may be oral or in writing, there must be a sufficient

level of formality so as to provide the recipient with fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011); *Reardon,* ___ F. Supp. 3d __, 2016 WL 3181138 at *16.  Simply blowing off steam does not constitute a protected activity. *Reardon,* ___ F. Supp. 3d __, 2016 WL 3181138 at *16.

      1.      Plaintiff Did Not Engage in a Protected Activity.

Plaintiff in this case contends that she "complained" about not being paid overtime. However, the evidence in this case demonstrates that Plaintiff merely inquired about overtime pay on two occasions in 2014. Ex. 6, Pl. Depo1, pp. 62, 64–65, 93–94.  At no point, did Plaintiff "complain" that she was not being paid properly or hint that she believed the law was being violated.  The mere request for the payment of overtime does not rise to the level of a "complaint" and thus cannot be considered a protected activity under the FLSA.  Plaintiff has failed to establish the primary element of a retaliation claim.

      2.      There is No Evidence to Suggest that Defendants Retaliated Against Plaintiff.

Plaintiff cannot demonstrate that there was any adverse action taken, much less a causal connection, between the purported protected activity and adverse action.  Plaintiff bases her claim on her assertion that she was terminated following her "complaint."  However, Plaintiff's own testimony establishes that she was not terminated.   Ex. 6, Pl. Depo1, p. 70.

In 2014, Joe Cauterucci telephoned Plaintiff believing she had missed an appointment with a patient.  According to Plaintiff, Mr. Cauterucci telephoned Plaintiff to find out why she had not gone to an appointment and then terminated her. Ex. 6, Pl. Depo1, pp. 67-69.  Following the telephone call with Mr. Cauterucci, Plaintiff telephoned Silvia Echeverria who assured Plaintiff that she was not fired.  *Id*. at p. 70.  Plaintiff continued the rest of her shift that day and

the rest of the week.  *Id.*  Plaintiff requested an apology and Mr. Cauterucci subsequently

apologized to Ms. Sanchez for his behavior.  *Id.* at 70.  Plaintiff accepted the apology and later

signed a document releasing CHHS from any and all claims relating to the incident.  *Id.* at 71–

73; Ex. 10.  Plaintiff subsequently sent a letter to CHHS unambiguously stating that she had not

been retaliated against by Joe Cauterucci or any other CHHS employee.  Ex. 10.

Plaintiff also contends that her hours were reduced in retaliation   The undisputed time

records refute this contention.  Plaintiff's hours did not decrease until mid-July of 2015 when her

primary client died.  Ex. 4, CSS Declaration, ¶ 16.  Not only is there a credible reason for the

reduction, but the passage of time weakens any inference of causation.  The Fourth Circuit has

noted that even a lapse of two months may be "sufficiently long so as to weaken significantly the

inference of causation."  *Horne v. Reznick Fedder & Silverman*, 154 Fed. Appx. 361, 364 (4th

Cir. 2005).  Plaintiff cannot credibly point to a decrease in hours to support her claim for

retaliation when the reduction in hours did not occur until July of the following year.

Finally, Plaintiff's own actions in July 2015, and thereafter, led to the reduction of hours.

Specifically, Plaintiff took time off from work and indicated that she was not prepared to take

assignments following the death of her client.  Ex. 17.  When Plaintiff was assigned a regular

client, she requested reassignment of that client to another caregiver.  Ex. 13.  In October 2015

and January 2016, Plaintiff declined offers of fulltime employment with CHHS because she

wanted to be able to work for other agencies.  Ex. 15.

There is no credible evidence that an adverse employment action was taken against

Plaintiff due to her two requests for overtime pay.  Plaintiff has failed to establish a claim for

retaliation under the FLSA.  Plaintiff fails to establish that she engaged in a protected activity,

that either corporate defendant took any adverse action against her or that there is any causal

connection between the reduction in her hours and any alleged protected activity.  Defendants

respectfully request that judgment in their favor be granted on Count Three of the Amended

Complaint.

## IV.   CONCLUSION

Based on the foregoing, Defendants Caregivers Staffing Services, Inc., Caregivers Home

Health Services, Inc. and Silvia Echeverria, respectfully request this Court to grant their Motion

for Summary Judgment and enter judgment in their favor and against Plaintiff on all counts of

the Amended Complaint.

<div style="margin-left: 40%;">

CAREGIVERS STAFFING SERVICES, INC.,
CAREGIVERS HOME HEALTH SERVICES,
INC. and  SILVIA ECHEVERRIA
By Counsel


_____/s/_____
Carol T. Stone
Virginia State Bar No. 21142
Virginia M. Sadler
Virginia State Bar No.
Attorneys for Defendants
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(Tel.)   (703) 246-0900
(Fax)   (703) 591-3673
Email:  c.stone@jocs-law.com
Email:  v.sadler@jocs-law.com

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of October, 2016, I electronically filed the

foregoing Defendants' Brief in Support of Motion for Summary Judgment with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing (NEF) to the

following:

> John C. Cook, Esquire
> Philip Krone, Esquire
> COOK CRAIG & FRANCUZENKO, PLLC
> 3050 Chain Bridge Road, Suite 200
> Fairfax, Virginia 22030
> Attorneys for Plaintiff
> Email:  jcook@cookcraig.com
> Email:  pkrone@cookcraig.com

> _____/s/_____
> Carol T. Stone
> Virginia State Bar No. 21142
> Attorneys for Defendants
> JORDAN COYNE LLP
> 10509 Judicial Drive, Suite 200
> Fairfax, Virginia 22030
> (Tel.)   (703) 246-0900
> (Fax)   (703) 591-3673
> Email:  c.stone@jocs-law.com