IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| BLANCA SANCHEZ, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:15-cv-01579 |
| CAREGIVERS STAFFING SERVICES, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## Memorandum Opinion

THIS MATTER comes before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment on all counts.

Blanca Sanchez ("Plaintiff") previously worked for both Caregivers Staffing Services, Inc. and Caregivers Home Health Services, Inc. ("Defendants"). Both companies provide services in the home health care industry. Staffing Services is owned exclusively by Silvia Echeverria, and it provides non-skilled services. Home Health is owned both by Ms. Echeverria and Ms. Teresita Cauterucci; it provides skilled services. The companies have separate scheduling, separate time-keeping procedures, and separate payroll. While Ms. Echeverria is an administrator for both companies, she has never personally employed Plaintiff.

Plaintiff is trained as a home health aide and personal care aide, but she has not been trained or licensed to work as a registered nurse (RN), practical nurse (LPN), or certified nurse assistant (CNA). While working for Defendants, she provided in-home personal care on an hourly basis at $16 per hour to clients of Staffing Services. Plaintiff provided personal care bathing visits on a flat fee basis at $25 per visit to clients of Home Health. Plaintiff did not provide any client of either employer with ostomy care, medically-related repositioning services, or complex or sterile wound care requiring professional training. Plaintiff did not provide clients with housework except for one client on weekends. The housework took minimal time to complete.

In November 2014, Defendants announced that nurses and physical therapists would start receiving overtime compensation. During the meeting, Plaintiff asked Ms. Echeverria for overtime compensation. Shortly after the meeting, another employee, Joe Cauterucci, told Plaintiff that she was fired. Plaintiff called Ms. Echeverria about this, and Ms. Echeverria assured Plaintiff that she was not fired. After Human Resources investigated the matter, Mr. Cauterucci apologized to Plaintiff for mistakenly telling her that she was fired. Plaintiff signed a letter that released Defendants from any claims arising from this incident.

Plaintiff reported her time using different time-cards depending on whether she performed work for Home Health or

Staffing Services. When Plaintiff combined her hours worked for Home Health and Staffing Services, she worked more than forty hours per week between January 1, 2015, and July 31, 2015. She did not receive overtime compensation at one and a half times her normal pay rate for these hours. Plaintiff has not worked more than forty hours per week for either Home Health and/or Staffing Services since July 31, 2015.

Plaintiff did not have any reduction of patients in April, May, or June of 2015. In July 2015, Plaintiff's work hours with Staffing Services decreased when one of her primary patients died. In October 2015, Plaintiff stopped working for Staffing Services altogether when she requested a reassignment from one of her patients. In both November 2015 and January 2016, Home Health offered Plaintiff full-time employment. She declined it.

On November 25, 2015, Plaintiff filed the present action in federal court. With the Court's permission, Plaintiff filed an Amended Complaint on March 31, 2016, which listed three counts: (1) violation of the Fair Labor Standards Act ("FLSA") overtime requirements; (2) quantum meruit; and (3) FLSA retaliation. On October 28, 2016, Plaintiff moved for Partial Summary Judgment on Count One, and Defendants moved for Summary Judgment on all counts. In her Opposition to Defendants' Motion for Summary Judgment, Plaintiff conceded that she is not entitled to recovery on Count Two for quantum meruit.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

First, Defendants are entitled to summary judgment on Count One. The FLSA requires employers to pay overtime compensation at time and a half to any non-exempt employee for any hours worked in excess of forty hours per week. 29 U.S.C. § 207. There are exemptions to the FLSA requirement, such as the "companionship services" exemption. The companionship exemption was changed in 2015. Previously, this exemption excused employers from paying overtime compensation to employees who provided fellowship and protection to elderly, injured, ill, or disabled persons. This exemption did not apply to an employee who provided skilled care requiring medical training or performed a substantial amount of housework.

4

The Department of Labor ("DOL") amended the "companionship services" exemption to broaden the FLSA's overtime compensation. Under the amended rule, third-party home health care providers of direct care workers cannot claim the companionship exemption. The new DOL rule was set to take effect on January 1, 2015. In December 2014, the Home Care Association of America challenged the new rule in the U.S. District Court for the District of Columbia. The District Court stayed the new rule and then held that the rule exceeded the DOL's rule-making authority. The DOL appealed to the D.C. Circuit Court of Appeals, who reversed and held that the new rule was valid. On October 13, 2015, the D.C. Circuit issued its mandate and reinstated the new rule. The DOL issued a notice that it would not enforce violations of the new rule prior to November 12, 2015.

On the overtime issue, Plaintiff asserts that the new DOL rule entitles her to overtime pay for hours worked in excess of forty hours per week between January 1, 2015, and July 31, 2015. The parties agree that Plaintiff is entitled to overtime pay if the new rule was effective on January 1, 2015. If the new rule was not yet effective until the D.C. Circuit issued its mandate, then Plaintiff is not entitled to overtime compensation because she provided companionship services.

The new DOL rule was not yet effective during the time for which Plaintiff claims she is entitled to overtime compensation.

The sequence of events created a legal nullity, which prevented the DOL rule from becoming effective until the D.C. Circuit's opinion was made effective with its October 13, 2015, mandate. In this sequence, the rule was set to become effective January 1, 2015, but the DOL rule did not become effective on January 1 because the D.C. District Court stayed the effective date until January 14, 2015. On January 14, 2015, the D.C. District Court vacated the DOL rule, reasoning that the rule exceeded the DOL's rule-making authority. Accordingly, the DOL rule did not become effective until the D.C. Circuit reversed and issued a mandate, making the reversal effective.

Plaintiff argues that the D.C. Circuit's opinion should be given full retroactive effect, making the new DOL rule valid as of January 1, 2015, and entitling her to overtime compensation. This argument is unpersuasive because the DOL rule was a legal nullity during the time-frame for which Plaintiff seeks overtime pay. Furthermore, if the rule was given full retroactive effect, it would unfairly force employers to pay overtime compensation for hours worked when overtime pay for companionship services was not required from employers nor expected by employees. Thus, the former companionship services rule applied during the time when Plaintiff worked overtime hours, and under that rule she is not entitled to overtime compensation.

Second, Defendants are entitled to summary judgment on Count Three. The FLSA prohibits retaliation. See 29 U.S.C. § 215(a)(3); Darveau v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008). To assert a claim for retaliation under the FLSA, a plaintiff must prove that: (1) he engaged in protected activity; (2) he suffered adverse action from his employer; and (3) there is a causal link between the protected activity and the adverse employment action. Id.

Here, Plaintiff did not engage in protected activity under the FLSA. The FLSA sets forth three forms of protected activity: filing a complaint, testifying in an FLSA proceeding, or serving on an industry committee. See Minor v. Bostwick Labs., Inc., 669 F.3d 428, 433 (4th Cir. 2012). An intracompany complaint about violations of the FLSA is protected activity. Id. The complaint must contain enough clarity and detail to place an employer on notice that the employee is asserting rights protected by law. Id. at 439.

Plaintiff's only conceivable complaints occurred in 2014 when she asked Ms. Echeverria about receiving overtime pay. In those requests, Plaintiff never mentioned the FLSA or any other statute that would entitle her to receive overtime compensation. She also never stated that she thought Defendants were violating the law by not paying her overtime. A mere request for overtime pay without more details or reasoning as to why the employee is

7

entitled to overtime compensation is not protected activity. Therefore, Plaintiff has failed to prove the first element of retaliation.

Furthermore, Plaintiff did not suffer adverse employment action. Plaintiff argues that she suffered adverse action from her employer when Joe Cauterucci terminated her. This argument is unpersuasive because Plaintiff was not actually fired, and Joe Cauterucci was not her employer. When Plaintiff called Ms. Echeverria about her job, Ms. Echeverria assured Plaintiff that her job was secure. Later on, Plaintiff signed a release of all claims she had related to this incident. As such, this incident does not constitute adverse employment action for a retaliation claim.

Alternatively, Plaintiff argues that she suffered adverse employment action when her hours were reduced in July 2015. The record, however, indicates that Plaintiff's hours were reduced because one of her primary patients died. When Defendants gave Plaintiff another client, Plaintiff requested a reassignment and time off work following the death of her primary patient. Also, in October 2015 and January 2016, Plaintiff declined offers of full-time employment with Home Health. Thus, Plaintiff's claim that she suffered adverse employment action is unpersuasive, and she has failed to prove the second element of retaliation.

Finally, Plaintiff cannot show a causal connection between the allegedly protected activity and the allegedly adverse employment action. To establish a causal connection, a plaintiff must prove that the adverse action would not have occurred but-for his protected activity. See Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). If there is no temporal proximity between the protected activity and the adverse action, it weakens the inference of but-for causation. Horne v. Reznick Fedder & Silverman, 154 F. App'x 361, 364 (4th Cir. 2005). Plaintiff's allegedly protected activity occurred in November 2014, while the allegedly adverse employment action occurred in July 2015. With such a long temporal gap between the two events, Plaintiff has not satisfied her burden of proof that there is a causal link. Therefore, Plaintiff has failed to prove the third element of retaliation.

For the foregoing reasons, Defendants' Motion for Summary Judgment on all counts should be GRANTED, and Plaintiff's Motion for Partial Summary Judgment should be DENIED. An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January 26, 2017